# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PXRE REINSURANCE COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 03 C 5155 |
| ) | |
| LUMBERMENS MUTUAL CASUALTY ) | Judge Shadur |
| COMPANY ) | |
| ) | Magistrate Judge Bobrick |
| Defendant. ) | |
| ) | |

**FILED MAY 14 2004 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT**

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO: All Attorneys of Record
(See Attached Service List)

PLEASE TAKE NOTICE that on April 22, 2004, the undersigned filed with the Clerk of the United States District Court for the Northern District of Illinois, **PXRE's Memorandum of Law in Response to Lumbermens' Motion to Set the Amount of Premium and Interest to be Funded by PXRE**, a copy of which is attached and hereby served upon you.

The undersigned, an attorney, certifies that she caused a copy of this Notice and the aforementioned documents on the parties listed on the attached service list in the manner identified thereupon this 14th day of May, 2004.

Dated: May 14, 2004

_Randi Ellias_
One of the Attorneys for
Plaintiff PXRE Reinsurance Company

James I. Rubin (2413191)
Teresa Snider (6210115)
Randi Ellias (6237021)
BUTLER RUBIN SALTARELLI & BOYD LLP
70 West Madison Street
Suite 1800
Chicago, Illinois 60602
(312) 444-9660



DOCKETED MAY 18 2004

# SERVICE LIST

Ellen G. Robinson..............................................**Via Messenger and Via Facsimile Transmission**
Robinson, Curley & Clayton, P.C.
300 South Wacker Drive
Suite 1700
Chicago, Illinois 60606
Tel: 312-663-3100
Fax: 312-663-0303

Edward P. Krugman.......................................**Via Facsimile Transmission and Fed Ex**
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, New York 10005
Tel: 212-701-3000
Fax: 212-269-5420

S. Penny Windle..................................................................**Via Facsimile Transmission**
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, New York 10005
Tel: 212-701-3693
Fax: 212-378-2621

Nick D. Giovanni ............................................**Via Messenger and Via Facsimile Transmission**
John F. Kloecker
Lord, Bissell & Brook
115 South LaSalle Street
Chicago, Illinois 60603
Tel: 312-443-0700
Fax: 312-443-0336

John M. Nonna ............................................................**Via Facsimile Transmission and Fed Ex**
Marc L. Abrams
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York 10019-5389
Tel: 212-424-8000
Fax: 212-424-8500

W:\P\PXRE\Pleadings\Certificate of Service for PXRE's Statement Pursuant to Rule 56(f) and Affidavit of Kenneth R. Pierce.doc

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
MAY 1 4 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| PXRE REINSURANCE COMPANY | ) |
| Plaintiff, | ) Case No. 03 C 5155 |
| vs. | ) Judge Shadur |
| LUMBERMENS MUTUAL CASUALTY COMPANY | ) Magistrate Judge Bobrick |
| Defendant, | ) |
| LUMBERMENS MUTUAL CASUALTY COMPANY | ) |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| ALEA NORTH AMERICA COMPANY | ) |
| Third-Party Defendant. | ) |

### PXRE'S MEMORANDUM OF LAW IN RESPONSE TO LUMBERMENS' MOTION TO SET THE AMOUNT OF PREMIUM AND INTEREST TO BE FUNDED BY PXRE

PXRE Reinsurance Company ("PXRE") respectfully submits this memorandum of law in response to the motion of Lumbermens Mutual Casualty Company ("Lumbermens") to set the amount of premium and interest to be deposited into a segregated account from which claims may be paid during the pendency of this litigation (the "Funding Account").[1]

---

[1] Lumbermens mischaracterizes the Funding Account as an "escrow" account (Lumbermens Memorandum at 1). In fact, the Funding Account is a segregated, interest-bearing account whose funds are to be managed within the sole discretion of PXRE.

Lumbermens' motion relates to a Funding Account that, although PXRE had no contractual obligation to establish, it did so voluntarily. PXRE agreed to fund this account to ease the burden on Lumbermens' cash flow requirements to pay claims that would be covered by the Retro Treaty (assuming the Retro Treaty is valid). As Lumbermens points out, the parties have agreed on the terms and conditions relating to the creation and administration of the Funding Account as well as the minimum amount to be deposited. PXRE has agreed to deposit into the Funding Account $19,712,500[2], which represents the total amount of premium it actually received from Lumbermens under the Retro Treaty, and thus the amount PXRE may be required to return to Lumbermens if the Retro Treaty is rescinded.

Notwithstanding PXRE's voluntary agreement to deposit nearly $20 million into the Funding Account – before Lumbermens has submitted any claims – Lumbermens now seeks an order directing PXRE to deposit into the Funding Account an *additional* $7,611,794, consisting of (a) interest on the $19,712,500, compounded annually at 7% from the inception of the Retro Treaty; plus (b) $1,037,500 in brokerage that was paid to Pegasus Advisors, Inc. ("Pegasus"), Lumbermens' reinsurance broker. See Lumbermens Memorandum of Law in Support of its Motion to Set the Amount of Premium and Interest to be Funded by PXRE ("Lumbermens Mem.") at 3. In other words, Lumbermens wants PXRE to deposit $1,037,500 into the Funding Account even though PXRE *never received this money*, and does not control it (Pegasus, the recipient of these funds, is Lumbermens' agent). For the reasons set forth below, Lumbermens' has no legal right to require PXRE to deposit these additional amounts, and, in any event, since Lumbermens has not made any showing it currently requires these additional

---

[2] The parties have agreed to a Stipulation to this effect. That stipulation is in the process of being executed and will be filed with the Court promptly upon full execution.

amounts to pay claims, there is no reason for this Court even to decide Lumbermens' motion at this time.

## ARGUMENT

A. **Interest**

### 1. PXRE Is Not Required To Deposit Any Interest Into The Funding Account

Lumbermens' argument that PXRE should be required to deposit into the Funding Account interest on the premium it has received is premised upon the assumption that if PXRE prevails on its rescission claim, and is required to restore Lumbermens to its status at the time the contract was made, PXRE would be unjustly enriched if it did not return "the benefit [it] has enjoyed, at Lumbermens' expense, in the form of interest earned on the reinsurance premium." Lumbermens Mem. at 3.

However, that is not the law in Illinois. If the Court rescinds the Retro Treaty because it finds that Lumbermens fraudulently induced PXRE to enter into the Retro Treaty, Lumbermens will be barred from recouping interest. In Long v. Kemper Life Insurance Co., 553 N.E.2d 439 (Ill. App. Ct. 1990), for example, Kemper Life rescinded the plaintiffs' policy and refunded plaintiffs' premium upon learning that the plaintiffs had made intentional misrepresentations regarding their medical history in their insurance application. Id. at 440. The plaintiffs sued for return of interest accrued on the premium, alleging, as Lumbermens does here, that the insurer unjustly retained the interest, and that the insurer was not entitled to retain the interest "because it elected to rescind the policy and, therefore, had a duty to return plaintiffs to the status quo by returning the premium and the interest which it earned." Id. The Court rejected plaintiffs' position, holding that plaintiffs were barred from recovering interest under the "doctrine of 'unclean hands,'" which "precludes a party from taking advantage of his own

wrong." Id. at 441. Finding that plaintiffs' misrepresentations were "related to the equitable action to recover the interest because the premium which plaintiffs paid when they fraudulently obtained the policy was the principal of the funds they now seek," the Court held that plaintiffs were not entitled to interest on the premium. Id.[3]

Here, PXRE alleges that Lumbermens failed to disclose and misrepresented material facts to induce PXRE to agree to the Retro Treaty. If PXRE proves those allegations and the Retro Treaty is rescinded as a result, Lumbermens would not be entitled to interest on returned premium. This rationale should apply here not just as a matter of law, but as a matter of policy. If Lumbermens is found to have acted fraudulently or in bad faith, but nevertheless receives interest on any returned premium following rescission of the Retro Treaty, fraud essentially becomes a risk-free endeavor for Lumbermens. Furthermore, entitling Lumbermens to recoup interest in the face of a finding that it committed fraud would be completely at odds with the utmost good faith underpinnings of the reinsurance relationship, since it would allow a fraudulent cedent to profit from its fraud, if not through the enforcement of a contract into which it deceived the reinsurer to enter, then by recovery of interest on premium refunded after a rescission awarded as a result of its wrongful conduct.[4]

---

[3] Indeed, even recklessness or negligence may act to bar an unjust enrichment or other equitable claim where the claimant's recklessness or negligence caused his claimed injury. See TRW Title Ins. Co. v. Security Union Title Ins. Co., 153 F.3d 822, 828-29 (7th Cir. 1998); United States v. Burczyk, 556 F.2d 394, 397 (7th Cir. 1977). Other jurisdictions are in accord. See, e.g., Gottlieb v. Putter, 254 N.E.2d 226, 226 (N.Y. 1969) (party who succeeds in having contract rescinded, and returns consideration for that contract, is not required to return interest on the amount of consideration).

[4] The cases upon which Lumbermens relies for its argument that PXRE is required to deposit interest are inapposite. In Puskar v. Hughes, 533 N.E.2d 962 (Ill. App. Ct. 1989), the unclean hands doctrine applied in Long was held to be inapplicable to a purchaser who succeeded in rescinding a contract for the sale of a business and who sought to use the doctrine offensively to preclude funds he owed the seller from being offset against the return of the purchase price. Id. at 969 ("Hughes seeks to assert misconduct on the part of plaintiffs not to defeat any equitable claim by plaintiffs, but rather to expand the scope of the remedy of rescission"). Here, by contrast, PXRE asserts the doctrine as a *defense* to Lumbermens' equitable claim for interest. In Williams v. Dunas, 352 N.E.2d 266 (Ill. App. Ct. 1976),

In any event, PXRE submits that this Court need not even reach a decision on this issue at this time. Because Lumbermens has not shown that the nearly $20 million PXRE has agreed to deposit will not be adequate to reimburse Lumbermens for any claims it may incur, the Court need not decide a dispute that may be mooted by the ultimate outcome of this litigation. See Board of Trustees, Vill. of Bolingbrook Police Pension Fund v. Underwood, Neuhaus & Co., 742 F. Supp. 984, 989 (N.D. Ill. 1990) ("Until a controversy has become concrete and focused, it is difficult for a court to evaluate the practical merits of the position of each party. If a court waits for an actual controversy, the issue before the court may be eliminated by later developments").

### 2. If PXRE Is Required To Deposit Interest On Premium Received, 7% Is Not The Applicable Rate

Should the Court nonetheless order PXRE to deposit into the Funding Account interest on premium received, such interest should not be calculated at a 7% rate. The 7% "contractual rate" relied upon by Lumbermens is explicitly limited to periodic scheduled premium *adjustments* that were prescribed by the Retro Treaty in the event that developed reinsurance premium exceeded or was less than prior reinsurance premium amounts paid. See Retro Treaty, Art. II. Lumbermens improperly attempts to bootstrap this provision to govern a situation in which PXRE has *voluntarily* agreed to deposit into the Funding Account *all* of the premium payments it has received under the Retro Treaty. Moreover, Lumbermens' reliance on a provision of the Retro Treaty is misguided in the context of a funding account premised on an assumption that the Retro Treaty is rescinded, and thus null and void.

---

there was no apparent finding of fraud as a basis for rescission; in any event, neither party raised the unclean hands doctrine and the Court did not otherwise address it. Id. at 268-69. Rowe v. Maremont Corp., No. 77 C 2837, 1986 WL 9753 (N.D. Ill. Aug. 28, 1986), aff'd, 850 F.2d 1226 (7th Cir. 1988), is not even a rescission case and merely holds that the "awarding of prejudgment interest is generally a matter of discretion [for the court]." Id. at *3.

Moreover, even by Lumbermens' own arguments, any interest payable in the event of rescission should be calculated at a rate reflecting the "benefit that PXRE has enjoyed." Lumbermens Mem. at 3. Accordingly, assuming – strictly for the sake of argument – that interest is to be deposited into the Funding Account, the interest rate should be equal to the average yield earned by PXRE on its fixed income investment portfolio during the relevant time period.

## B. Brokerage

In addition to interest, Lumbermens seeks to compel PXRE to deposit $1,037,500 in brokerage that was paid to Pegasus. These funds do *not* belong to PXRE, and there is no dispute that these funds were paid to and are controlled by Pegasus. This brokerage fee, as is the case with every other reinsurance contract brokered by an intermediary, was paid to the intermediary for the intermediary's benefit. There are various arrangements by which an intermediary receives its fees. For instance, the brokerage fee may be included in "gross" premium paid to the reinsurer, who then transfers the fee to the intermediary. Or the fee may be deducted by the intermediary when the intermediary transmits the premium to the reinsurer. Regardless of the mechanics by which the intermediary receives its fee, it is the cedent's obligation to see that the intermediary – the cedent's agent – is paid for its services. Here, Lumbermens was the cedent and Pegasus was Lumbermens' agent. Pegasus received the $1,037,500 fee for services performed for Lumbermens, *not* PXRE.

Lumbermens argues that because (a) PXRE's reinsurance premium is calculated at 10.375% of the subject premium (Lumbermens Mem. at 4; citing Retro Treaty, Art. II); and (b) there "is no ceding commission and there are no other deductions applicable to the payment of premium" under the Retro Treaty (id.; citing Retro Treaty, Art. III), PXRE is responsible for collecting brokerage in the event the Retro Treaty is rescinded. But Lumbermens does nothing

more than simply recite these contractual provisions; it does not, because it cannot, demonstrate how they support its argument that PXRE is obligated to deposit funds that were paid to Lumbermens' broker. The word "brokerage" is found nowhere in either of these provisions.

Lumbermens' reliance on an alleged "course of conduct" is similarly unavailing. The fact that PXRE's premium quote on the Retro Treaty included a brokerage fee and premium adjustments were exchanged between the parties during the course of the Retro Treaty simply reflects the funding mechanisms implemented for the convenience of the parties, and is absolutely irrelevant to PXRE's intent or the legal determination of which party assumes the collection risk of brokerage if the Retro Treaty is rescinded.

In fact, the only legal relationship relevant to this issue is between Lumbermens and Pegasus. Unlike Lumbermens, PXRE is not, and has never been in, contractual privity with Pegasus. PXRE does not know (and has no reason to know) whether under the terms of Lumbermens' agreement with Pegasus, rescission of the Retro Treaty would require Pegasus to refund its brokerage commissions. In the event the Retro Treaty is rescinded, whether Lumbermens would be entitled to the return of compensation paid to its broker would be governed by the principal-agent relationship between Lumbermens and Pegasus as to which PXRE has no involvement.

Moreover, it would be illogical and contrary to reinsurance law and practice to require PXRE to deposit into the Funding Account an amount *greater than* what it actually received – particularly since any order of rescission would necessarily be based upon the misconduct of Lumbermens, not PXRE.[5]

---

[5] Lumbermens' attempt to distinguish Cummings v. Dusenbury, 472 N.E.2d 575 (Ill. App. Ct. 1984) is unavailing. Cummings held that the seller of a house was returned to the status quo without receiving a return of brokerage commissions since the purchaser did not receive any benefit from the payment of those commissions. Id. at 581. Likewise, PXRE has not received any benefit from the

In sum, PXRE respectfully submits that the resolution of this motion must consider the context in which the motion has been made. The Funding Account was created *voluntarily* by PXRE on terms mutually agreeable to the parties for the sole purpose of assisting Lumbermens with its cash flow burden by providing a means to pay any claims incurred during this litigation that would be covered if the Retro Treaty was valid. The nearly $20 million PXRE has *already voluntarily agreed* to deposit into this account fulfills this purpose. In the event that claims exceed the agreed upon amount before this litigation is resolved, Lumbermens is free to renew its arguments that PXRE is responsible for interest and brokerage. For the reasons set forth herein, however, a decision on that question now would be premature, based on an incomplete factual record and thus unnecessary.

## CONCLUSION

For the foregoing reasons, PXRE respectfully requests that the Court deny Lumbermens' motion for an order directing PXRE to deposit into the Funding Account the amount of $27,324,294, together with such other and further relief the Court deems appropriate.

Dated: May 14, 2004

_____
One of the Attorneys for Plaintiff
PXRE REINSURANCE COMPANY

James I. Rubin (2413191)
Randi Ellias (6237021)
Teresa Snider (6210115)
BUTLER RUBIN SALTARELLI & BOYD
70 West Madison Street
Suite 1800
Chicago, Illinois 60602
(312) 444-9660

---

payment of commissions to Pegasus. Lumbermens' assertion that PXRE "retained the benefit of interest accrued" on amounts paid to Pegasus is simply erroneous. Accordingly, a return of brokerage is not required to return the parties to the status quo.

Kenneth R. Pierce *(pro hac vice)*
Jeffrey S. Burman *(pro hac vice)*
CADWALADER, WICKERSHAM & TAFT LLP
100 Maiden Lane
New York, NY 10038
(212) 504-6000

W:\P\PXRE\Pleadings\response to motion to set premium and interest.DOC