## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PXRE REINSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03 C 5155 |
| | ) | |
| LUMBERMENS MUTUAL CASUALTY | ) | Judge Shadur |
| COMPANY | ) | |
| | ) | Magistrate Judge Bobrick |
| Defendant. | ) | |
| | ) | |

FILED

MAY 18 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO: All Attorneys of Record
(See Attached Service List)

PLEASE TAKE NOTICE that on May 18, 2004, the undersigned filed with the Clerk of the United States District Court for the Northern District of Illinois, **PXRE's Memorandum Pursuant to the Court's Order of April 27, 2004**, a copy of which is attached and hereby served upon you.

The undersigned, an attorney, certifies that she caused a copy of this Notice and the aforementioned documents on the parties listed on the attached service list in the manner identified thereupon this 18th day of May, 2004.

Dated: May 18, 2004

*Randi Ellias*

One of the Attorneys for
Plaintiff PXRE Reinsurance Company

James I. Rubin (2413191)
Teresa Snider (6210115)
Randi Ellias (6237021)
BUTLER RUBIN SALTARELLI & BOYD LLP
70 West Madison Street
Suite 1800
Chicago, Illinois 60602
(312) 444-9660

DOCKETED

MAY 20 2004

45

## SERVICE LIST

Ellen G. Robinson...................................................................................**Via Messenger**
Robinson, Curley & Clayton, P.C.
300 South Wacker Drive
Suite 1700
Chicago, Illinois 60606
Tel: 312-663-3100
Fax: 312-663-0303

Edward P. Krugman...................................................................................**Fed Ex**
S. Penny Windle
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, New York 10005
Tel: 212-701-3000
Fax: 212-269-5420

Nick D. Giovanni ...................................................................................**Via Messenger**
John F. Kloecker
Lord, Bissell & Brook
115 South LaSalle Street
Chicago, Illinois 60603
Tel: 312-443-0700
Fax: 312-443-0336

John M. Nonna ...................................................................................**Fed Ex**
Marc L. Abrams
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York 10019-5389
Tel: 212-424-8000
Fax: 212-424-8500

W:\P\PXRE\Pleadings\Certificate of Service for PXRE's 5-18-04.doc

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PXRE REINSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 5155 |
| | ) | |
| vs. | ) | Judge Shadur |
| | ) | |
| LUMBERMENS MUTUAL CASUALTY | ) | Magistrate Judge Bobrick |
| COMPANY | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| LUMBERMENS MUTUAL CASUALTY | ) | |
| COMPANY | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALEA NORTH AMERICA COMPANY | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

FILED

MAY 1 8 2004

DOCKETED
MAY 2 0 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**PXRE'S MEMORANDUM PURSUANT TO
THE COURT'S ORDER OF APRIL 27, 2004**

PXRE Reinsurance Company ("PXRE") respectfully submits this memorandum pursuant to the Court's Memorandum Order of April 27, 2004 ("Mem. Order"), which directed PXRE to address certain issues in connection with its motion to compel. PXRE's motion to compel seeks an order requiring Lumbermens to produce documents falling into two general categories: (i) documents relating to the sale of Equus Re; and (ii) documents relating to Lumbermens' solicitation of reinsurers to provide retrocessional coverage for Lumbermens'

45

exposure on the Protected Portfolio. In its Memorandum Order, the Court stated that PXRE must cross three initial thresholds before these areas of discovery may be opened up:

1. Illinois Law. The first threshold issue raised by the Court is whether Illinois law applies the *uberrimae fidae* standard to the reinsurance context at issue here. Mem. Order at 2. As we discuss below, the *uberrimae fidae* standard does indeed apply. However, before addressing that issue, it is important to note that PXRE would be entitled to the documents which are the subject of its motion to compel *even under Lumbermens' own construction of Illinois law* (which incorrectly asserts that *uberrmiae fidae* is inapplicable).

Under Lumbermens' construction of Illinois law, and regardless of whether *uberrmiae fidae* is applicable, PXRE would prevail on its rescission claims if it could show that, during the placement of the Retro Treaty, Lumbermens either (a) contributed to and failed to correct a misapprehension by PXRE of a material fact; or (b) made affirmative misrepresentations to PXRE. (S.J. Br. at 9.) The evidence in this case will show that Lumbermens did <u>both</u>. First, Lumbermens contributed to, and failed to correct, PXRE's misapprehension of material facts by, among other things, allowing PXRE to underwrite and price the Retro Treaty under the misapprehension that Lumbermens had evaluated risks on their own merits when in fact Lumbermens had entered into side deals and other similar agreements under which it accepted known losses in return for future profitable business.[1] Second, Lumbermens' undisclosed side deals and other similar agreements were completely contrary to affirmative representations Lumbermens made to PXRE, including, for example, that Equus Re engaged in "disciplined, controlled underwriting." Moreover, Lumbermens furnished to PXRE

---

[1] As we will demonstrate when we file our brief in opposition to Lumbermens' motion, whether Lumbermens' conduct was consistent or inconsistent with an attempt to conceal information, or to contribute to PXRE's misapprehension about the book of business to be reinsured, is a classic question of material fact that precludes summary judgment.

-2-

an actuarial study prepared by Tillinghast which indicated that the paid loss ratio of the Protected Portfolio would be 75%, when Lumbermens knew that the paid loss ratio would greatly exceed this amount.

The documents sought in PXRE's motion to compel are directly relevant to Lumbermens' *knowledge* and *intent* regarding these very issues. For example, Alea – the buyer of the Equus Re business – undoubtedly had specific reasons for declining to retain the risk of the Protected Portfolio once the portfolio's paid loss ratio exceeded 75%. And Lumbermens' management obviously had specific reasons for selling a business that it had started only 14 months earlier. The documents which are the subject of PXRE's motion to compel will shed light on whether Lumbermens' management was aware of side deals and other underwriting malfeasance and sought to conceal these facts to potential buyers, or whether facts emerged during the sale of the Equus Re business that caused or motivated Lumbermens to conceal material information from PXRE, or to make affirmative misrepresentations to PXRE, in order to consummate the deal with PXRE and thereby fully and finally dispose of the money-losing Equus Re business. Did Alea (or other potential buyers or retrocessionaires), through their investigation and due diligence, discover Lumbermens' side deals, other underwriting malfeasance, or other information indicating that the Tillinghast study was flawed? Did Lumbermens disclose specific facts to Alea which were inconsistent with representations it made to PXRE and which prompted Alea to reject risk above a 75% paid loss ratio? Since Lumbermens was forced to retain that risk, *did Lumbermens, as a result, resolve to conceal those facts when it shifted to PXRE the risk of a loss ratio above 75%?* Our point is that the motion to compel should be granted even under Lumbermens' construction of Illinois law, because the documents we seek are relevant to the question whether and why Lumbermens made affirmative

NYLIB2 229570.3

misrepresentations, concealed material facts and allowed PXRE to labor under a misapprehension regarding the risks it was evaluating.

It is important to emphasize that Lumbermens is seeking *summary judgment*, and yet at the same time is resisting discovery of the very information it claims PXRE must prove in order to defeat summary judgment. Lumbermens' document production to date has been completely inadequate, consisting of individual claims advices and documentation, multiple copies of the same contracts between Lumbermens and Alea, and many documents that were originally produced to Lumbermens by PXRE. Lumbermens' opposition to PXRE's motion to compel is part of Lumbermens' overall strategy (explained in our Rule 56(f) statement) *to resist discovery of the complete factual record, box-in PXRE's claims to the facts PXRE knew prior to discovery when it filed the Complaint, and then to seek summary judgment based on self-serving affidavits and an incomplete factual record.*

In its Memorandum Order, the Court suggested there may be a distinction as to the discovery to which PXRE is entitled in order to pursue its fraud-based damages claims, as compared with rescission. This followed the Court's inquiry at the April 26, 2004 status conference as to the basis of PXRE's rescission claim resulting from Lumbermens' concealment and misrepresentations, given the fact that four years have passed since the time the reinsurance contract at issue was negotiated and executed. It must be noted, however, that even Lumbermens itself, while asserting that PXRE has "waived" its rescission claim, concedes that the "black letter law in Illinois" is that waiver of the right to rescind a contract applies *only* when a person, "once on notice of the true facts" and "after discovering the untruth of the representations, conducts himself with reference to the transaction as though it were still subsisting and binding." (S.J. Br. at 18). It is important to keep in mind that the relevant treaty and claim files comprise over 200,000 pages, and before this litigation commenced, PXRE simply participated *in normal,*

-4-

routine reinsurance claims auditing, which focused on claims and billing detail, and did not involve the type of intensive document-by-document scrutiny of the underwriting files that we are now undertaking in the course of discovery. Indeed, it was mere happenstance that PXRE's Chief Financial Officer was able to find a document as shocking as the Lexington Side Deal during a routine reinsurance audit in the Summer of 2003. Although the significance of this and similar arrangements we are now finding are enormous – PXRE never would have entered into the Retro Treaty if Lumbermens had disclosed their existence – discovering these documents buried among 200,000 pages is like finding the proverbial needle in a haystack. The fact is that PXRE was not on notice of the Lexington Side Deal until July 2003, and it filed the instant lawsuit shortly thereafter.[2]

The Court also stated in its Memorandum Order that PXRE must show "that it is at least arguable" that *uberrimae fidae* applies to Lumbermens' pre-contractual disclosure obligations at issue in this case. As we will discuss fully in our memorandum in opposition to Lumbermens' motion for summary judgment, it is not just arguable, but is a certainty that *uberrimae fidae* applies. It has been established for well over a century that a ceding insurance company has an unqualified duty to disclose to a prospective reinsurer *all* facts that are material to the risk the reinsurer is being asked to assume – <u>even if the relationship is not labeled a fiduciary one</u>. This fundamental duty of disclosure was enunciated by the United States Supreme Court over one hundred and twenty years ago. In <u>Sun Mutual Insurance Co. v. Ocean Insurance Co.</u>, 107 U.S. 485 (1883), the Supreme Court held that, in "the case of reinsurance":

---

[2]     Lumbermens also asserts that an August 2000 e-mail should have triggered a "duty of inquiry," but as we will discuss fully in our opposition to Lumbermens' motion for summary judgment, whether PXRE had the requisite knowledge from the August 2000 e-mail is a classic question of fact requiring testimony of Lumbermens' witnesses as to what they intended to convey and of PXRE's witnesses as to what they understood.

[C]oncealment, whether intentional or inadvertent, we have no hesitation in saying, avoids the policy . . . .

In respect to the duty of disclosing all material facts . . . [t]he obligation . . . is one *uberrimae fidei*. The duty of communication, indeed, is independent of the intention, and is violated by the fact of concealment even where there is no design to deceive. . . .

\* \* \*

Nor will the [reinsured] be permitted to urge, as an excuse for his omission to communicate material facts, that they were actually known to the [reinsurer], unless it appears that [the reinsurer's] knowledge was as particular and full as his own information. It is the duty of the [reinsured] to place the [reinsurer] in the same situation as himself, to give [the reinsurer] the same means and opportunity of judging of the value of the risks; and when any circumstance is withheld, however slight and immaterial it may have seemed to himself, that, if disclosed, would probably have influenced the terms of the [re]insurance, the concealment vitiates the policy.

Id. at 510-11.[3]

Lumbermens struggles mightily in its brief to distinguish Sun Mutual, arguing that the Court should not follow this Supreme Court reinsurance precedent – which has since been followed in numerous cases – because (1) it is merely a statement of "alleged custom and usage" which cannot be implied into the Retro Contract, or (2) alternatively, it is a statement of "general law" which "is not how Illinois handles reinsurance." (S.J. Br. at 15.) But Lumbermens is wrong on both scores. As PXRE will establish in its brief in opposition to summary judgment, a reinsurer's claim based on breach of a cedent's pre-contractual disclosure duty is judged by a

---

[3] *Uberrimae fidae* has been defined, by a leading reinsurance treaty, as:

Literally, of the utmost good faith. A defining characterization of some (contractual) relationships, of which reinsurance is universally recognized to be one . . . A breach of utmost good faith, especially in regard to a full and voluntary disclosure of the elements of risk of loss, is accepted a grounds for any necessary reformation or redress, including rescission.

Reinsurance, supra, Glossary at 665 (emphasis added).

different – and heightened – standard than a conventional fraud claim in a general commercial setting. This distinguishes reinsurance from other commercial contracts, in which the doctrine of *caveat emptor* applies to pre-contractual disclosure duties. <u>See</u>, <u>e.g.</u>, Henry T. Kramer, "The Nature of Reinsurance" <u>in</u> Robert W. Strain, <u>Reinsurance</u> 9 (1980) ("As used in reinsurance, utmost good faith means that the maxim of *caveat emptor* has no application . . . A basic duty of the reinsured is to disclose to the reinsurer all known information touching on the risk of loss . . .").

Lumbermens' emphasis on whether or not the relationship can be characterized as a "fiduciary" one misses the point. The question is whether, as a matter of law, a ceding insurer has a pre-contractual disclosure duty governed by the principle of *uberrimae fidae* or "utmost good faith," <u>regardless of whether the duty is technically a "fiduciary" one</u>. The United States Supreme Court in <u>Sun Mutual</u> answered that question in the affirmative, as have federal courts in other jurisdictions. <u>See</u>, <u>e.g.</u>, <u>Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.</u>, 979 F.2d 268, 279-80 (2d Cir. 1992); <u>A/S Ivarans Rederei v. Puerto Rico Ports Auth.</u>, 617 F.2d 903, 905 (1st Cir. 1980); <u>Northwestern Mut. Fire Ass'n v. Union Mut. Fire Ins. Co. of Providence, R.I.</u>, 144 F.2d 274, 276 (9th Cir. 1944); <u>New Hampshire Ins. Co. v. Philadelphia Reins. Corp.</u>, Nos. C88-0378, 1719, Tr. at 18-19 (N.D. Cal. Mar. 8, 1990).

The same issue presented in these other cases is presented in the instant case, <u>i.e.</u>, whether *uberrimae fidae* applies as a matter of law to the pre-contractual disclosure duties of a ceding insurer in the placement of a reinsurance treaty. The one Illinois state court case that decided this issue, <u>American Re-Ins. Co. v. MGIC Inv. Corp.</u>, No. 77 CH 1457, <u>slip op.</u> (Cir. Ct. Cook Co. Ch. Div. Oct. 20, 1987), held in favor of PXRE's position and was ignored by Lumbermens in its summary judgment brief. In <u>American Re-Ins. Co.</u>, the Court held that *uberrimae fidae* does indeed apply to the pre-contractual disclosure duties of a ceding insurer.

-7-

By contrast, this issue was <u>not</u> decided in the Illinois federal court decisions cited by Lumbermens. <u>Mutuelle Generale Francaise Vie v. Life Assurance Co. of Pennsylvania</u>, 688 F. Supp. 386 (N.D. Ill. 1988) and <u>International Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.</u>, 1989 WL 165045 (N.D. Ill. Dec. 29, 1989) involved duties in connection with performance under a reinsurance contract as distinct from disclosure duties in the solicitation and formation of a reinsurance contract. <u>International Ins. Co. v. Certain Underwriters at Lloyd's of London</u>, 1991 WL 349907 (N.D. Ill. Dec. 29, 1989), involved facultative as distinct from treaty reinsurance, and, in any event, we believe was incorrectly decided in light of <u>Sun Mutual</u>, <u>American Re-Ins. Co.</u>, and the numerous other federal cases that have considered this issue. In sum, as we will establish in PXRE's brief in opposition to summary judgment, *uberrimae fidae* is indeed the legal standard applicable to Lumbermens' disclosure duties at the time the contract at issue was solicited, negotiated and executed.

       2. <u>The Incorporation Clause</u>. The second threshold issue raised by the Court is whether, even if the *uberrimae fidae* standard applies, it is overridden by the incorporation clause set forth in Article XI of the Retro Treaty. Mem. Order at 2-3. It is important to keep in mind that *uberrimae fidae* is not merely "custom and practice," but is the <u>legal standard</u> that governs the cedent-reinsurer relationship. As explained by the Court of Appeals of New York, "'a reinsured is obliged to disclose to potential reinsurers all material facts concerning the original risk, and failure to do so generally entitles the reinsurer to rescission of its contract.'" <u>Michigan Nat'l Bank-Oakland v. American Centennial Ins. Co. (In re Liquidation of Union Indem. Ins. Co. of N.Y.</u>, 674 N.E.2d 313, 317 (N.Y. 1996) (quoting <u>Sumitomo Marine & Fire Ins. Co. v Cologne Reins. Co. of Am.</u>, 552 N.E.2d 139, 143 (N.Y. 1990)). And, as a matter of law, an incorporation clause neither supercedes nor modifies the legal standard applicable to the duty of disclosure in the formation of a contract. <u>See, e.g.</u>, <u>Sunstream Jet Exp., Inc. v. International Air Serv. Co.</u>,

-8-

Ltd., 734 F.2d 1258, 1265 (7th Cir. 1984). An incorporation clause like the one found in the Retro Treaty would prevent PXRE from introducing parol evidence in support of an argument that a provision was omitted from the contract or that the terms of the transaction are contrary to those contained in the contract. Id. But PXRE makes neither of these arguments; Lumbermens is incorrect when it suggests that PXRE seeks to "import implied terms into the contract." (S.J. Br. at 15.) Rather, PXRE alleges that Lumbermens breached the legal standard applicable to reinsurance agreements in the solicitation, negotiation and formation of the Retro Treaty. This claim is unaffected by the existence of the incorporation clause: "While Illinois courts follow the general rule that a writing complete on its face may not be varied or contradicted by evidence outside the writing, it is well settled that fraud in the inducement may be proved by extrinsic evidence." Lovejoy Elecs., Inc. v. O'Berto, 616 F. Supp. 1464, 1467-68 (N.D. Ill. 1985). The basis for this rule is that "[f]raud 'goes to the very heart of the agreement itself' . . . vitiating the mutual assent necessary to the creation of a valid contract." Id. at 1468 (citations omitted). Thus, [t]he fact that the contract purports on its face to be a valid integration does not alter this result." Id.; see also Caliber Partners, Ltd. v. Affeld, 583 F. Supp. 1308, 1311-12 (N.D. Ill. 1984) (Shadur, J.) ("Allegations of representations contrary to the contract terms are properly considered" to determine whether a party was fraudulently induced into entering the contract, regardless of whether the contract contains an incorporation clause). Accordingly, because the discovery PXRE seeks is relevant to, among other things, PXRE's claims concerning Lumbermens' *pre-contractual* fraudulent concealment and misrepresentations, it is neither barred nor overridden by the existence of an incorporation clause in the Retro Treaty.

　　　　3. Sufficiency of Documents. The third threshold issue outlined by the Court is whether the underwriting and claims files already made available by Alea, in conjunction with the final contracts between Lumbermens and Alea and Lumbermens and PXRE, provide the full

information required by PXRE to identify side deals and other similar agreements that PXRE alleges Lumbermens had an affirmative duty to disclose. Mem. Order at 3. It is true that if there are side deals or other similar agreements that were set down in writing, and those written agreements were not destroyed or removed from the underwriting and claim files, then they may be found in these documents. However, as explained above and in its briefs, PXRE seeks discovery relating to the Equus Re sale and Lumbermens' attempts to place retrocessional protection *not* for the purpose of identifying additional side deals and similar agreements, but rather to obtain facts that are relevant to Lumbermens' intent, state of mind, and the materiality of the concealed facts. Under Lumbermens' own construction of Illinois law, PXRE must establish that the side deals and similar instances of Lumbermens' underwriting malfeasance were (a) material; and (b) intentionally concealed from or misrepresented to PXRE. The documents sought in PXRE's motion to compel go directly to *materiality* and *intent* – the very elements that Lumbermens says we must show. The discovery sought is directly relevant to issues such as whether Lumbermens knew of and concealed the side agreements and other underwriting malfeasance from potential buyers; whether Lumbermens affirmatively disclosed to Alea or other potential purchasers or retrocessionaires the existence of side deals or similar agreements; or whether the side deals and similar agreements played a role in Lumbermens' decision to sell the Equus Re business and heavily reinsure its exposure to the Protected Portfolio. PXRE also has a right to determine whether Lumbermens disclosed the existence of such side deals and similar agreements to Tillinghast when it retained Tillinghast to issue its report analyzing the Protected Portfolio, and thus whether Lumbermens allowed PXRE to rely upon the Tillinghast Report even though it knew that report was materially inaccurate and misleading. None of this information is to be found in either the Alea files or the final contracts.

-10-

4. <u>PXRE's Rule 56(f) Statement and Responding to Lumbermens' Summary Judgment Motion</u>. The final issue outlined in the April 27, 2004 Memorandum Order is the time by which PXRE will be prepared to submit its brief in opposition to summary judgment, assuming the Court does not grant PXRE's motion to compel. Mem. Order at 3-4. As explained in PXRE's Rule 56(f) statement and accompanying affidavit – even if PXRE's motion to compel is denied – it is essential that PXRE be afforded the opportunity to take the depositions of:

(a) the individuals on whose self-serving affidavits Lumbermens' motion for summary judgment is based;

(b) other individuals who had a material role in the solicitation, negotiation or placement of the Retro Treaty;

(c) the Equus Re personnel who were involved in the underwriting of the contracts in the Protected Portfolio;

(d) the Tillinghast personnel who created the actuarial report analyzing the Protected Portfolio; and

(e) the Pegasus personnel responsible for placing the Retro Treaty on Lumbermens' behalf.

In addition, as we explain in our Rule 56(f) statement, it is essential that PXRE obtain and review the documents sought in outstanding third party subpoenas addressed to the broker, Pegasus, and the actuarial firm, Tillinghast, seeking several categories of documents unaffected by the motion to compel. For obvious reasons, we do not wish to begin depositions until we receive and review these documents. Once we receive these documents, PXRE estimates that it would require 30-60 days to complete depositions of the witnesses relevant to Lumbermens' summary judgment motion, followed by 30 days to prepare the opposition brief and Local Rule 56.1 Statement.

-11-

Finally, PXRE strongly believes that the issue whether *uberrimae fidae* applies to this case should not be bifurcated and addressed separately from Lumbermens' summary judgment motion. PXRE will brief the issue fully in its memorandum in opposition to summary judgment. As discussed above, in deciding the applicability of *uberrimae fidae*, this Court will be predicting how an Illinois state court would decide the issue. We respectfully suggest that decision-making on an issue of this significance is best accomplished in the context of the actual circumstances and the complete factual setting, which will be established only after discovery on the pertinent issues has been completed. The legal standard applicable here is not an abstract legal principle, but is a rule that will govern not merely this case but also the conduct and behavior of parties to future reinsurance transactions in Illinois. The standard itself will be informed by, and can only be decided in the light of, actual facts. In responding to Lumbermens' motion for summary judgment, PXRE will seek to rely on a complete factual record, as opposed to Lumbermens' reliance on a partially complete factual record and self-serving affidavits in presenting its argument for summary judgment. Moreover, there is no reason to decide the issue of the applicable legal standard in advance of the actual summary judgment briefing. Thus, we respectfully suggest that briefing on the legal standard should not be separated from the briefing on Lumbermens' summary judgment motion, but should be part and parcel of PXRE's brief in opposition to summary judgment.

-12-

## **CONCLUSION**

For the foregoing reasons, PXRE respectfully requests that: (1) PXRE's motion to compel be granted; (2) if the motion to compel is not granted, that PXRE be afforded the opportunity to take the discovery set forth in its Rule 56(f) statement and accompanying affidavit before responding to Lumbermens' motion for summary judgment; and (3) briefing on the legal standard applicable to Lumbermens' disclosure obligations relating to PXRE's rescission claim should not be separated from, but should be part of, the briefing on Lumbermens' summary judgment motion.

Dated:    May 18, 2004

*Randi Ellias*
_____
One of the Attorneys for Plaintiff
PXRE REINSURANCE COMPANY

James I. Rubin (2413191)
Randi Ellias (6237021)
Teresa Snider (6210115)
BUTLER RUBIN SALTARELLI & BOYD
70 West Madison Street
Suite 1800
Chicago, Illinois 60602
(312) 444-9660

Kenneth R. Pierce (*pro hac vice*)
Jeffrey S. Burman (*pro hac vice*)
CADWALADER, WICKERSHAM & TAFT LLP
100 Maiden Lane
New York, NY 10038
(212) 504-6000

-13-

# See Case File for Exhibits