# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5155 | **DATE** | 5/21/2004 |
| **CASE TITLE** | PXRE Reinsurance Co. vs. Lumbermens Mutual Casualty Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. PXRE's motion to compel is denied. This action is set for a status hearing at 8:45 on May 28, 2003 to discuss the procedures and timing for proceeding with Lumbermens' pending issue-narrowing motion. (34-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | 47 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/21/2004 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PXRE REINSURANCE COMPANY, )
)
Plaintiff, )
)
v. ) No. 03 C 5155
)
LUMBERMENS MUTUAL CASUALTY )
COMPANY, )
)
Defendant. )

MEMORANDUM OPINION AND ORDER

Following the completion of the parties' briefing on the motion by PXRE Insurance Company ("PXRE") to compel the production by Lumbermens Mutual Casualty Company ("Lumbermens") of a wide range of documents, this Court issued a brief April 27 memorandum order ("Order") that identified three unresolved issues as to which "PXRE must cross (as it has not to this point) an initial threshold." This follow-up opinion speaks to the contentions advanced in PXRE's responsive memorandum, which is regrettably longer on rhetoric than on analysis.

## Uberrimae Fidae - Fiduciary Duty

PXRE Mem. 2 begins its discussion of the first question posed by the Order this way:

> The first threshold issue raised by the Court is whether Illinois law applies the uberrimae fidae standard to the reinsurance context at issue here. Mem. Order at 2. As we discuss below, the uberrimae fidae standard does indeed apply.

Although PXRE Mem. 2-5 then diverts attention to a different question (which is essentially covered in the second section of

this opinion), when PXRE does return at Mem. 5-8 to the <u>uberrimae fidae</u> subject it does not deliver as advertised.

In that respect PXRE's counsel first points to <u>Sun Mut. Ins. Co. v. Ocean Ins. Co.</u>, 107 U.S. 485 (1883) as having established the Latin principle on which it seeks to rely. But even though this Court must confess to retaining the stubborn view that <u>Swift v. Tyson</u>, 41 U.S. 1 (1842) was right and <u>Erie v. Tompkins</u>, 304 U.S. 64 (1938) was wrong, that battle is over. And under <u>Erie</u> principles the <u>Sun Mutual</u> opinion does not--despite the august authority that issued it--establish Illinois law.

When the remainder of PXRE's underbrush is then cleared away to focus properly on Illinois law, its counsel can identify only a single opinion by an Illinois trial judge, the late Harold Siegan, back in 1987 (<u>American Re-Ins. Co. v. MGIC Inv. Corp.</u>, No. 77 CH 1457, slip op. (Cir. Ct. Cook Co. Ch. Div. Oct. 20, 1987)) that treats with the doctrine in the reinsurance context. This Court intends no disrespect to the late Judge Siegan, whom this Court knew well personally and for whom it had a high regard. But it cannot be gainsaid that the chancellors in the Cook County Circuit Court do not issue precedential opinions on Illinois state law, any more than (as our Court of Appeals repeats periodically) District Courts have the power to declare precedential law for the federal court system.

As sheer chance would have it, this Court itself had

occasion in <u>Mutuelle Generale Francaise Vie v. Life Assurance Co. of Pa.</u>, 688 F.Supp. 386 (N.D. Ill. 1988) to consider whether the reinsurer-reinsured relationship was instinct with the type of fiduciary relationship that the <u>uberrimae fidae</u> doctrine has been held to connote, and counsel in that case cited Judge Siegan's <u>American Re-Ins.</u> opinion to this Court. After stating in <u>Mutuelle Generale Francaise</u>, <u>id</u>. at 397, just as it has done in this opinion, "that a single trial level decision, which under Illinois law has no real precedential force, is similarly without meaningful value in this diversity case," this Court went on to say (<u>id</u>. at 398 n.16, emphasis in original):

> Except for <u>American Re-Insurance</u>, no Illinois court has <u>ever</u> called a reinsured the fiduciary of its reinsurer (and <u>American Re-Insurance</u> itself did not purport to find any prior authority to that effect).[1]

PXRE has identified nothing the intervening decade and a half that alters the continuing accuracy of that statement.[2]

---

[1] [Footnote by this Court] It is worth noting in passing that the reinsurance treaty in <u>Mutuelle Generale Francaise</u> expressly said that the reinsurer there "was entitled to place its 'highest faith' in the reinsured"--a provision conspicuously absent from the contract between the parties to this litigation.

[2] In the year following this Court's issuance of its <u>Mutuelle Generale Francaise</u> opinion, its colleague Judge (now Chief Judge) Charles Kocoras expressly "concluded that Illinois law does not recognize the existence of a fiduciary relationship between an insurer and its insured," so that "as a matter of Illinois law, no fiduciary obligations could attach" to the reinsurer-reinsured relationship (<u>Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.</u>, No. 88 C 320, 1989 WL 165045, at *1 (N.D. Ill. Dec. 29)).

3

Just one final note as to the concept of uberrimae fidae, whose true significance is not of course in its verbiage but rather in the duties that the doctrine connotes--indeed, that is the reason that this opinion has focused and will continue to focus on the existence or nonexistence of fiduciary responsibilities on the part of Lumbermens. Just last month District Judge Barbara Crabb of the Western District of Wisconsin had the occasion to speak to the uberrimae fidae doctrine in the marine insurance context, where the doctrine originated, in Progressive N. Ins. Co. v. Bachmann, No. 03-C-0566-C, 2004 WL 835726 (W.D. Wis. Apr. 19). Judge Crabb's analysis led her to this conclusion (id. at *6):

> However, as states began to take over regulation of the insurance industry, most abandoned the strict uberrimae fidei articulation in favor of standards more favorable to the insured. "Today, the sole remaining substantial vestige of the doctrine is in maritime insurance law." Albany Insurance Co. v. Anh Thi Kieu, 927 F.2d 882, 888 (5th Cir. 1991)(citations omitted).

### Effect of the Parties' Agreement

As the Order pointed out in identifying the second question that PXRE had to answer, Art. 11A of the parties' April 10, 2000 Aggregate Excess of Loss Retrocessional Reinsurance Agreement ("Agreement") states (emphasis added):

> This Stop Loss Cover and the exhibits and schedules attached hereto constitute the entire agreement between the parties hereto relating to the subject matter hereof and supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether oral or written, of the parties,

4

and <u>there are no general or specific warranties, representations or other agreements by or among the parties in connection with the entering into this Stop Loss Cover or the subject matter of any of the foregoing except as specifically set forth or contemplated herein</u>.

In principal part (but not exclusively) because it has failed to heed the decisive thrust of the underlined provision, PXRE's attempted response to that question is basically flawed.

As PXRE would have it, "<u>uberrimae fidae</u> is not merely 'custom and practice,' but is the <u>legal standard</u> that governs the cedent-reinsurer relationship" (Mem. 8). But it is simply not true that a contract freely entered into by parties such as PXRE and Lumbermens is trumped by a doctrine that, like other statements of legal rules, is a default rule. No case suggests that the Agreement's provision quoted in the preceding paragraph, with its express negation of any warranties, representations or other agreements that are not in the document itself, is somehow contrary to public policy so as to be overridden by <u>uberrimae fidae</u> or any other doctrine. There is no question that the Agreement was thoroughly negotiated between the two major corporate players--in its final form it occupies fully 16 single-spaced printed pages (with PXRE having been represented by the well-established New York law firm of Morgan, Lewis & Bockius LLP).

PXRE attempts to get out of that vise by labeling the quoted provision as (presumably merely) an "incorporation clause,"

citing <u>Sunstream Jet Exp., Inc. v. Int'l Air Serv. Co.</u>, 734 F.2d 1258, 1265 (7th Cir. 1984). But even a brief look at the discussion in that case (<u>id</u>. at 1265-66) demonstrates its irrelevance: It dealt with the availability of extrinsic evidence to explain any ambiguous provisions even in the face of an integration clause, while here there is no issue of assertedly ambiguous language in the Agreement--and more importantly, here the parties went well beyond the ordinary integration clause to preclude precisely what PXRE is attempting here by seeking to import implied representations found nowhere in the Agreement.

This Court of course recognizes, as it has consistently said during the course of this proceeding to this point, that proof of fraud in the inducement of the parties' contract would necessarily prevail as against Lumbermens' reliance on one of the provisions of what would then have been shown to be a fraudulently-induced contract. But the establishment of such a claim calls into play a much narrower scope of discovery than that sought to be invoked by PXRE. And that in turn leads to the third question posed by the Order.

<u>Scope of Discovery</u>

It is worth noting at the outset that the Agreement is different from the open-ended treaty that this Court was called on to deal with in <u>Mutuelle Generale Francaise</u>, where this Court found a fiduciary duty based on (1) the "highest faith" language

6

in the agreement between the litigants there and (2) the
continued responsibility of the reinsured in conjunction with
future policies that came within the designated classes. By
contrast, the reinsured coverage in this instance was limited to
an existing book of business.

In that respect it is highly relevant--and is relevant as
well to the application and effect of the Article 11.A language
quoted in the preceding section--that PXRE's people were given,
and that they exercised, the full opportunity to audit the entire
book of business that then became the subject of the Agreement.
That audit occupied the period from February 10 through
February 15, 2000 (with no indication having been given to this
Court that PXRE's representatives were limited to that time
frame), and Lumbermens' LR 56.1 Statement Ex. J (pages PXRE
005708-12) sets out the detailed analysis that stemmed from that
onsite underwriting audit. Thus the situation between the
parties was that PXRE (1) was given the full opportunity to
conduct whatever due diligence study it wished to carry on,
(2) reached its own conclusions as to the evaluation of the risks
in taking on the retrocession and (3) having done so, agreed to
the contractual provision that barred it from claiming any
representations or warranties other than those specified in the
written Agreement.

PXRE has explained the late filing of this action seeking

7

rescission of the Agreement by pointing to its asserted recent discovery of a claimed smoking gun that it has variously labeled with such pejorative adjectives as "shocking"--a document that referred to the agreement of Equus Re to underwrite certain unfavorable risks based on a promise of future more favorable business. According to PXRE, that discovery of a document between Lumbermens and Lexington Insurance Company, relating to business produced by Thor Underwriting, Ltd., took place by chance during a recent periodic audit by one of PXRE's people. And PXRE seeks to use that discovery as the springboard for an extraordinarily wide range of discovery, on the premise that one assertedly bad apple spoils the entire truckload--or at least calls for every other apple in the truckload to be turned over for microscopic examination.[3]

It sounds from PXRE's description of the suspect document--which it labels the Lexington Side Deal--that it was part of the files made available to PXRE's due diligence review when the parties made their deal. If so, responsibility for any nondiscovery until PXRE's more recent follow-up audit can hardly be placed at Lumbermens' doorstep. And if, as PXRE says it fears, there is documentation of other so-called side deals, and if those documents are also in files made available to PXRE for

---

[3] This metaphor is of course inapt, for compliance with PXRE's blunderbuss document request would be infinitely more complex and expensive than any delivery of a truckload of apples.

its due diligence review, Lumbermens will not be required to cull through the files at this time--after all, PXRE had the full opportunity, and *it* chose how and to what extent, to carry out its due diligence review.

## Conclusion

This Court reconfirms its always-held view, reiterated earlier in this opinion, that a claim of fraud in the inducement may perhaps be viable and may carry with it an entitlement to appropriate discovery. But no notions of <u>uberrimae fidae</u> or fiduciary relationship are in play as between PXRE and Lumbermens, so that PXRE's effort to invoke special duties of disclosure on Lumbermens' part is ill-conceived. Hence PXRE is simply not entitled to the sweeping scope of discovery that it has requested.

Just as importantly, PXRE has failed to identify an appropriately limited range of discovery in substitution for the impermissibly broad one it has sought. It is not for this Court to reshape PXRE's claim to appropriate size and scope. Its motion to compel is therefore denied. Finally, this case is set for a status hearing at 8:45 a.m. May 28, 2003 to discuss the procedures and timing for proceeding with Lumbermens' pending issue-narrowing motion.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 21, 2004